# JAMES R. VIVIAN *v.* ZONING BOARD OF APPEALS OF THE TOWN OF CLINTON ET AL.
## (AC 22472)

Lavery, C. J., and Bishop and West, Js.

Argued March 24—officially released June 10, 2003

*John W. Barnett,* with whom, on the brief, were *Jeffrey R. Babbin* and *Dylan S. Calsyn,* for the appellant (plaintiff).

*Leslie S. Hollo,* for the appellees (defendant Rudolf W. Reu et al.).

*Opinion*

WEST, J. The plaintiff, James R. Vivian, appeals from the judgment of the trial court dismissing his appeal from the decision of the defendant zoning board of appeals of the town of Clinton (board). On appeal, the plaintiff claims that the court improperly affirmed the decision of the board because (1) the zoning permit application[1] (application) did not indicate the location of either the existing or the proposed septic system, as required by the Clinton zoning regulations (regulations), (2) the proposed addition would violate the setback requirements of the regulations and (3) the proposed addition would violate the regulations' prohibition against the expansion of a nonconforming building. We affirm the judgment of the trial court.

Following a hearing on the plaintiff's administrative appeal conducted on April 26, 2001, the court found the following facts. On or about November 18, 1999, the defendants Rudolf W. Reu and Sophie H. Reu filed the application with respect to real property located at 78A Waterside Lane in Clinton.[2] The real property is located in a zone designated as R-20. The location of the existing building on the property violates the setback

---

[1] The application consisted of a building permit, flood hazard area permit and certificate of zoning compliance application.

[2] Waterside Condominium Association, Inc., also is a defendant and has participated in this appeal. The board has not participated in the appeal to this court. We therefore refer in this opinion to the Reus and to Waterside Condominium Association, Inc., as the defendants.

requirements on one side and to the rear, but is legally nonconforming within the zone. In their application, the Reus sought permission to construct a second story to add two bathrooms and two other rooms to the building. The proposed addition, a dormer, contemplates a vertical expansion that will not increase the size of the nonconforming footprint of the building.[3] The zoning enforcement officer (zoning officer) approved and certified the compliance section of the application.

The plaintiff, who owns real property at 64 Waterside Drive in Clinton abutting the property that is the subject of the application,[4] appealed to the board from the zoning officer's decision. The board heard the appeal on May 17, 2000, and denied it. On June 14, 2000, the plaintiff appealed from the decision of the board, alleging that the board had acted illegally, arbitrarily and in abuse of its discretion by denying his appeal from the action of the zoning officer. More specifically, the plaintiff alleged that the application was inconsistent with the setback requirements of the regulations and that the application failed to provide sufficient information about the septic system.

As to the plaintiff's claim that the board had acted illegally, arbitrarily and in abuse of its discretion in denying his appeal because the application allegedly violated the setback requirements of the regulations, the court concluded in a lengthy analysis that the board's decision effectuates Clinton's zoning regulations, which are distinguishable from the regulations of other towns cited by the plaintiff in support of his

---

[3] The expansion will raise the roofline of the building more than one foot to add a dormer to the building. The parties agree that the height of the proposed roofline is within the height restrictions of the regulations.

[4] The court concluded that the plaintiff, as an abutting property owner, was aggrieved by the board's decision pursuant to General Statutes § 8-8 (a) (1).

appeal.[5] Furthermore, the court concluded that on prior occasions, the zoning officer and the board had permitted the vertical expansion of nonconforming buildings, provided that the footprint of those structures was not increased.

With respect to the plaintiff's claim that the application lacked required information about the septic system, the court found that the application did not indicate the location of either the existing or the proposed septic systems. The record, however, supports the court's finding that the town sanitarian had sufficient information to approve the application, notwithstanding the omission. Testimony before the board reveals that the sanitarian discussed the viability of the septic system with the Reus' architect. The court, therefore, concluded that the application was not so deficient that the zoning officer was precluded from issuing a building permit. Furthermore, pursuant to § 19-13-B100a of the Regulations of Connecticut State Agencies, the zoning officer is not empowered to enforce the public health code. Before construction may begin, the Reus must secure the approval of the sanitarian. The zoning officer, therefore, did not act improperly in approving the application. The court dismissed the plaintiff's appeal. Following this court's granting of certification to appeal, the plaintiff appealed from the judgment of dismissal.

[5] The plaintiff relied on the following Superior Court decisions in its appeal to the Superior Court: *Doyen* v. *Zoning Board of Appeals*, judicial district of Middlesex, Superior Court, Docket No. 87357 (March 7, 2000) (26 Conn. L. Rptr. 583); *Gians* v. *Zoning Board of Appeals*, Superior Court, judicial district of Middlesex, Docket No. 55224 (March 19, 1991); *Settipane* v. *Zoning Board of Appeals*, Superior Court, judicial district of Middlesex, Docket No. 45435 (February 20, 1987). Subsequent to the judgment rendered by the trial court in this case, this court reversed the judgment of the trial court in *Doyen*. See *Doyen* v. *Zoning Board of Appeals*, 67 Conn. App. 597, 789 A.2d 478, cert. denied, 260 Conn. 901, 793 A.2d 1088 (2002).

The following standard of review is applicable to the plaintiff's appeal. "Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court had to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal. . . . [U]pon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons . . . . We, in turn, review the action of the trial court. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . .

"A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it. . . . Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions in the ordinance is nevertheless a question of law for the court. . . . The court is not bound by the legal interpretation of the ordinance by the [board]. . . . If a board's time-tested interpretation of a regulation is reasonable, however, that interpretation should be accorded great weight by the courts. . . .

"In the present case, the principal issue on appeal is the interpretation of certain provisions of the [Clinton] zoning regulations. Because the trial court in interpreting the regulations has made conclusions of law, our review is plenary. . . . [W]e [therefore] must decide

whether the conclusions are legally and logically correct and supported by the facts in the record. . . .

"In discussing this issue, we note that [a] local ordinance is a municipal legislative enactment and the same canons of construction which we use in interpreting statutes are applicable to ordinances. . . . A court must interpret a statute as written . . . and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. . . . A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance. . . . The words [employed] are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms. . . . The language of the ordinance is construed so that no clause or provision is considered superfluous, void or insignificant. . . . Common sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legislative body." (Citations omitted; internal quotation marks omitted.) *Doyen* v. *Zoning Board of Appeals*, 67 Conn. App. 597, 603–605, 789 A.2d 478, cert. denied, 260 Conn. 901, 793 A.2d 1088 (2002).

I

The plaintiff's first claim is that the court improperly affirmed the decision of the board even though it found that the application did not indicate the location of either the existing or proposed septic systems, which information is required expressly by the regulations. We are not persuaded.

The plaintiff's claim is premised on his construction of § 3.1 of the regulations, which provides in relevant part: "Applications for Zoning Permits . . . shall be submitted to the Zoning Enforcement Officer . . . on

a form provided by the Commission . . . . Applications for Zoning Permits shall be accompanied by an application fee . . . and by the following: 3.1.1 Plot Plan: A Plot Plan must be submitted . . . showing the following . . . (c) the location of any existing or proposed on-site sewage disposal system . . . ." Clinton Zoning Regs., § 3.1.

None of the parties challenge the court's finding that the application does not contain information concerning the existing or proposed sewage disposal system. On the basis of its review of the record, however, the court concluded that the zoning officer and board had sufficient information about the sewage system to approve the application, even though the information was not contained on the application. Pursuant to our plenary review of the regulations and the record, we agree with the court's conclusion.

The substance of the plaintiff's argument is that the zoning officer and the board did not follow the letter of the law. The defendants have taken the position that the plaintiff has exalted form over substance. To support his position, the plaintiff has cited three cases in which zoning boards granted variances without making written findings of hardship, as required by the applicable zoning regulations.[6] The plaintiff has cited the cases for the proposition that a zoning board may not ignore its regulations. Although we agree with that legal proposition, as we must, we note that our Supreme Court has indicated, in one of the cases cited by the plaintiff, that a reviewing court may look to the record for the facts necessary to support the board's decision. See *Gross* v. *Planning & Zoning Board of Appeals*, 171 Conn. 326, 328, 370 A.2d 944 (1976) ("[m]oreover, such

---

[6] The cases cited by the plaintiff are *Gross* v. *Planning & Zoning Board of Appeals*, 171 Conn. 326, 327–28, 370 A.2d 944 (1976); *Carlson* v. *Zoning Board of Appeals*, 158 Conn. 86, 90, 255 A.2d 841 (1969); *Gregorio* v. *Zoning Board of Appeals*, 155 Conn. 422, 428–29, 232 A.2d 330 (1967).

findings cannot be implied from the minutes or from other portions of the record before us").

The record before us indicates that the zoning officer and the board had sufficient information, although not contained on the application, by which they could evaluate the existing and proposed sewage system. In our review and analysis, we cannot overlook the fact that it is the local health director, not the zoning enforcement officer, who is responsible for determining whether an application complies with the public health code. See Regs., Conn. State Agencies § 19-13-B100a (b).[7] Obviously, the application requests information about the septic system so that it can be reviewed by the local health director to determine whether the application complies with the public health code.[8]

The record contains a copy of the application, a pre-printed form containing nine boxes requesting specific information, including boxes six, "description of work," and eight, "water and sewage data." Boxes six and eight of the application contain the following: Box six— "2nd story addition see attached plan 2 bathrooms, 2 bedrooms 26 x 40"; and box eight— "a. If Residence, no. of bedrooms 2 . . . c. Water Supply: ✓ Public . . . ."

The application also contains a page bearing the notation, "[t]his page is for office use only." One of the boxes

---

[7] "Building conversion, change in use. If public sewers are not available, no building or part thereof shall be altered so as to enable its continuous occupancy by performing any building conversion, nor shall there be a change in use unless the local director of health has determined that after the conversion or change in use, a code-complying area exists on the lot for installation of a subsurface sewage disposal system. . . . The property owner . . . shall submit design plans or a sketch to demonstrate how the property contains a code-complying area that can accommodate a sewage disposal system. . . ." Regs., Conn. State Agencies § 19-13-B100a (b).

[8] The purpose of the regulations is set forth in § 1.4, which provides in relevant part: "The purpose of these Regulations is to promote the health, safety and general welfare of the community . . . to facilitate adequate provision for . . . sewerage . . . to provide for the public health . . . ." Clinton Zoning Regs., § 1.4.

on that page is identified as "Department of Health" and has been completed as follows: "Approved on <u>12/20/99</u> by [<u>signature illegible</u>] sanitarian . . . comments: <u>Health code prohibits the addition of bedrooms septic can only accomodate [sic] a two bedroom house</u>." The building permit issued by the building department contains the following on that preprinted form: "Remarks: <u>Health Code prohibits the addition of bedrooms. Septic can only accomodate [sic] total of two bedrooms</u>."

The architectural renderings that were submitted with the application depict two bedrooms on the second story and two rooms on the first floor to be used as a dining room and a computer room. The zoning officer spoke at the public hearing, representing that the application was for a reconfiguration, that the downstairs was being moved upstairs and that there would be no increase in the number of bedrooms. He also stated: "It has been reviewed by the town sanitarian. He did sign off on the project, and the health codes really are not my jurisdiction."

In his brief to this court, the plaintiff has argued that not only was the septic information required as a matter of law, but also in this case, it was vital to whether the application should have been granted, as the sanitarian expressly stated that the existing septic system could not handle additional bedrooms. The record contradicts the plaintiff's position. The sanitarian approved the application, noting that the septic system could accommodate only two bedrooms. The application indicates that the addition to the building was for two bedrooms, and that the existing first floor rooms would be used for a dining room and a computer room. Consequently, we conclude that although the plot plan did not indicate where the existing or proposed septic systems were located, there was sufficient evidence before the board to conclude that public health concerns were addressed by the sanitarian, who is charged with enforcing the

public health code. We therefore agree with the court that there were no deficiencies in the application that precluded the zoning officer from approving it and that the board did not act illegally, arbitrarily or in abuse of its discretion.

## II

The plaintiff's second claim is that the court improperly concluded that there is no vertical component to the regulations' setback requirements.[9] In particular, the plaintiff challenges the court's conclusion that the regulations "do not explicitly safeguard vertical setbacks insofar as additions to structures are concerned." He supports his contention that the setback requirements encompass a vertical dimension by relying on the section of the regulations that provides a limited setback exception for marquees, canopies and several other structures. See Clinton Zoning Regs., § 8.1.2. The plaintiff concludes that there is no logical way for the court to have concluded that the setback requirements apply only at ground level where the regulations contain an express exception for marquees and the like. We disagree with the plaintiff's interpretation of the court's decision.

"Since zoning regulations are in derogation of common law property rights . . . the regulation cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within its express terms. . . . The words employed by the local legislative body are to be interpreted in accordance with their natural and usual meaning . . . and any interpretation that would torture the ordinary meaning of the words to create ambiguity will be rejected." (Citations omitted.) *Spero* v. *Zoning Board of Appeals*, 217 Conn. 435, 441, 586 A.2d 590 (1991);

---

[9] The plaintiff makes no claim that the proposed expansion is illegal because it extends into the side, rear or front setbacks.

*Farrior* v. *Zoning Board of Appeals*, 70 Conn. App. 86, 89–90, 796 A.2d 1262 (2002).

"A court must interpret a statute as written . . . and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. . . . A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance." (Citation omitted; internal quotation marks omitted.) *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 46 Conn. App. 566, 571, 700 A.2d 67, cert. denied, 243 Conn. 935, 702 A.2d 640 (1997). "The words [employed] in zoning ordinances are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms." *Coppola* v. *Zoning Board of Appeals*, 23 Conn. App. 636, 641, 583 A.2d 650 (1990).

The regulations define setbacks as "[t]he distance that buildings and/or other structures are set back from front, rear or side property lines."[10] Clinton Zoning Regs., 2.20.2. Section 2.20.2 does not restrict the height of a building, only the distance from the front, rear and sides of a building to the property lines.[11] The setback is the distance between the point where a building touches the ground and the property line, and it rises necessarily

---

[10] "Building: A structure which is completely enclosed by a roof and by solid exterior walls along whose outside faces can be traced an unbroken line for the complete circumference of the structure and which is permanently affixed to a lot or lots and used or intended for the shelter, support or enclosure of persons, animals or property of any kind." Clinton Zoning Regs., § 2.3.1.

"Structure: Anything constructed or erected, including a dwelling which is placed on a lot, or anything attached to something having a permanent location on or beneath the ground, including swimming pools, but excluding walls or fences less than six feet (6') feet in height."

[11] The height of buildings is governed by § 8.7 of the regulations.

into the sky, although the regulations do not expressly say so. Similarly, the nonconformity itself has a vertical component that adheres to the footprint of the building because common sense tells us that a building is not flat.

With regard to the plaintiff's claim, we first note that in concluding that the regulations do not *explicitly* safeguard vertical setbacks, the court did so in the context of comparing the Clinton regulations with the Essex zoning regulations, which do contain a provision that setbacks shall be open and unobstructed to the sky. See *Doyen* v. *Zoning Board of Appeals*, supra, 67 Conn. App. 597 (discussing Essex zoning regulations). The Clinton zoning regulations contain no such language. Consequently, the court did not improperly conclude that the regulations do not *explicitly* safeguard vertical setbacks.

The regulations provide an exception for above the ground structures to intrude on the setback requirements. Section 8.1 provides in relevant part: "Setbacks: No building or other structure shall extend into any setbacks required by Section 8, except as follows . . . 8.1.2 Marquees, canopies, eaves, open fire escapes and similar projections without projecting walls may project not more than five feet (5') into the required setback area provided that it does not adversely impact the public health and safety." The plaintiff argues that the exception provided for by § 8.1.2 demonstrates conclusively that setbacks, as intended by the regulations, must be the space extending from the ground to the sky rather than merely an area at ground level. We agree, but do not conclude that the court decided otherwise.[12]

---

[12] The court concluded that the Clinton zoning regulations did not explicitly safeguard vertical setbacks compared to the Essex zoning regulations, which specifically provide that setbacks shall be open and unobstructed to the sky. See *Doyen* v. *Zoning Board of Appeals*, supra, 67 Conn. App. 597. The Clinton zoning regulations contain no such language.

Section 8.1.2, the marquee exception, permits structures to be constructed five feet *into* the setback above ground. It does not state that the footprint of a nonconforming building is capped at its existing height. Our construction of the regulations is consistent with § 13.1.1 of the regulations, which provides in relevant part: "No non-conforming use, building or structure shall be enlarged and no non-conforming use of land, buildings or other structures shall be extended to include any land, building or other structure, or portion thereof, which is not subject to such non-conformity. . . ." Clinton Zoning Regs., § 13.1.1.[13] Section 13.1.1 anticipates the expansion of nonconforming buildings in certain situations.

To simplify the matter, the defendants suggest that the applicable portion of the regulation is: "No non-conforming . . . building . . . shall be enlarged . . . to include any land . . . which is not subject to such non-conformity. . . ." We agree that this is the pertinent language of the regulation. By adding a dormer over the nonconforming footprint, the Reus are not expanding their nonconforming building into the space over the setback to include land that is not subject to the nonconformity. We also agree with the defendants that if we were to construe the regulations as the plaintiff argues that we should, the last sentence of § 13.1.1 would be rendered a nullity. "A statute should be construed so that no word, phrase or clause will be rendered meaningless." *C. White & Son, Inc.* v. *Rocky Hill,*

---

[13] "No non-conforming use, building or structure shall be enlarged and no non-conforming use of land, buildings or other structures shall be extended to include any land, building or other structure, or portion thereof, which is not subject to such non-conformity. Any non-conforming use of a building or other structure, or portion thereof, however, may be extended to include any portion of the building or structure manifestly designed for such use. A non-conforming building or structure may be expanded or enlarged if that expansion or enlargement is in conformity with all applicable requirements of these Regulations." Clinton Zoning Regs., § 13.1.1.

181 Conn. 114, 122, 434 A.2d 949 (1980); see also *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, supra, 46 Conn. App. 571.

For those reasons, we conclude that the court properly determined that the application conformed with the setback regulations.

### III

The plaintiff's third claim is that the court improperly concluded that the application does not violate the regulation prohibiting the expansion of nonconforming structures where the application violates the sewage information provision and the expansion violates the setback requirements of the regulations. The plaintiff relies on § 13.1.1. See footnote 13. We do not agree.

The principal issue before us is the interpretation of certain provisions of the Clinton zoning regulations. The regulation at issue is § 13.1.1. The plaintiff claims that the specific provision of § 13.1.1 at issue is its last sentence, which provides: "A non-conforming building or structure may be expanded or enlarged if that expansion or enlargement is in conformity with all applicable requirements of these Regulations." The plaintiff argues that because the application does not contain the required information concerning sewage disposal and the proposed addition intrudes on a vertical setback, it does not conform with the requirements of the regulations. This argument fails for the reasons stated in parts I and II.

"Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court had to decide whether the board correctly interpreted the section [of the regula-

tions] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal. . . . [U]pon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons . . . ." (Internal quotation marks omitted.) *Raymond* v. *Zoning Board of Appeals*, 76 Conn. App. 222, 228–29, 820 A.2d 275, cert. denied, 264 Conn. 906, 826 A.2d 177 (2003). "Courts are not to substitute their judgment for that of the board . . . ." (Internal quotation marks omitted.) Id., 229.

We agree with the court that the board did not apply the regulations to the facts of this case in an unreasonable, arbitrary or illegal manner. The record reveals that the zoning officer in the past had approved zoning applications to expand nonconforming buildings vertically. Historically, Clinton has not required a variance for the vertical expansion of a nonconforming building. When voting in favor of the motion to deny the plaintiff's appeal, members of the board stated that past practice should take precedence and that the board would be changing the current zoning regulations if it were to sustain the appeal. On the basis of the record, we conclude that board did not abuse its discretion. The plaintiff has failed to meet his burden of proof to demonstrate that the board acted improperly. See *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, 218 Conn. 265, 269–70, 588 A.2d 1372 (1991).

The judgment is affirmed.

In this opinion the other judges concurred.