PETER DIPIETRO *v.* ZONING BOARD OF APPEALS
OF THE CITY OF MILFORD
(AC 26166)

Schaller, Dranginis and Gruendel, Js.

Argued October 25, 2005—officially released January 24, 2006

*Brian A. Lema,* for the appellant (plaintiff).

*Matthew B. Woods,* with whom, on the brief, was *Cynthia C. Anger,* assistant city attorney, for the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Peter DiPietro, appeals from the judgment of the trial court affirming the decision of the defendant, the zoning board of appeals of the city of Milford, upholding the cease and desist order issued by the assistant city planner. The plaintiff claims that the court improperly found that (1) (a) the city of Milford (city) had statutory jurisdiction to regulate use of the plaintiff's docks, (b) zoning regulation of the docks is not preempted by the state and (c) enforcement of the regulation did not exceed the city's police power, and (2) there was an adequate and legal basis in the

record for the defendant's decision.[1] Because we conclude that the defendant acted within its authority to enforce regulations concerning the plaintiff's use of the docks and that its action was supported by the record, we affirm the judgment of the trial court.

The subject property, owned by the plaintiff jointly with Ann DiPietro and Thomas DiPietro,[2] is at 30 Rogers Avenue in Milford, within a single-family residential zoning district with direct access to Milford harbor. In September, 1966, a special permit was first issued by the city zoning commission for the construction of a bulkhead and pier, ramps and floats. Since that time, the property has been used as a boating facility.

On January 31, 1994, the DiPietros applied to the Milford planning and zoning board (board) for a special permit, site plan review and coastal area site plan in order to install eight boat slips with attendant docking and storage facilities. The board granted the application in part, on January 17, 1995, allowing only "six (6) boat slips for the maximum number of six (6) boats" and the attendant storage and docking facilities for those boats.

The DiPietros then applied for a permit from the commissioner of environmental protection. On September 20, 1995, the commissioner issued a permit for the same construction as was approved by the board, and also authorized installation of a travel lift and access pier.[3] The DiPietros thereafter applied to the board to amend their special permit to include the travel lift and access pier approved by the commissioner of environ-

---

[1] The plaintiff also claimed that the court improperly found that collateral estoppel prevented him from raising the issue of jurisdiction. Because we reach the merits of the jurisdiction claim, we need not address whether collateral estoppel applied.

[2] Ann DiPietro and Thomas DiPietro participated in this matter until the issuance of the cease and desist order. They are not parties to the present action and did not participate in this appeal.

[3] On November 17, 1995, the Milford harbor management commission found the permit to be in compliance with the harbor management plan.

mental protection. The board denied the application on February 6, 1996, and the DiPietros appealed to the Superior Court. The court sustained the appeal on January 8, 1997. The DiPietros then reapplied to the board for a permit to begin construction, including "[r]elocation of an existing approved dock configuration/6 boat slips allowed . . . ."[4]

On July 25, 2003, the assistant city planner, Peter W. Crabtree, had evidence of twelve boats docked at the subject property, and issued a cease and desist order to the plaintiff,[5] requiring that the six boats in excess of the six permitted be removed from the property.[6] At a hearing on October 14, 2003, after the plaintiff acknowledged that he was keeping twelve boats at the dock, the defendant upheld the cease and desist order by a unanimous vote. The plaintiff appealed to the Superior Court, arguing that the defendant lacked the authority to enforce the order because the commissioner of environmental protection exercises exclusive jurisdiction over the slips. The Superior Court affirmed the defendant's decision, determining that the plaintiff was barred by collateral estoppel from raising the jurisdiction issue and that the state had not preempted the city from enforcing the city's zoning regulations on the boating facility. This appeal followed.

## I

We begin by addressing the plaintiff's claims that the court improperly concluded that the city had jurisdiction to regulate the plaintiff's use of the slips.

---

[4] The Superior Court decision ordered the board to grant the application as long as the boating facilities were designated for the exclusive use of the owners. The permit granted by the board included this restriction. On December 16, 1998, the assistant city planner issued a cease and desist order to remove three boats owned by nonfamily members. This order was appealed, and the appeal was sustained by the defendant.

[5] We note that since the time of the hearing on the cease and desist order issued to the plaintiff, the action has been maintained by the plaintiff alone.

[6] We note that the plaintiff has not obtained approval to keep twelve boats at his facility from any agency, whether state or local.

As an initial matter, we set forth our standard of review. Whether a municipality has the authority to enact an ordinance, such as those restricting use of the docks, raises a question of statutory interpretation and, therefore, our review is plenary. *Campion* v. *Board of Aldermen*, 85 Conn. App. 820, 830, 859 A.2d 586 (2004), cert. granted on other grounds, 272 Conn. 920, 867 A.2d 837 (2005). "When . . . the trial court draws conclusions of law . . . we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Lewis* v. *Planning & Zoning Commission*, 76 Conn. App. 280, 284, 818 A.2d 889 (2003).

The role of the courts in statutory interpretation is well established. "A court must interpret a statute as written . . . and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation." (Internal quotation marks omitted.) *Vivian* v. *Zoning Board of Appeals*, 77 Conn. App. 340, 345, 823 A.2d 374 (2003). "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Urbanowicz* v. *Planning & Zoning Commission*, 87 Conn. App. 277, 287, 865 A.2d 474 (2005); see also General Statutes § 1-2z.

## A

The plaintiff first claims that the city lacks the statutory authority to enact regulations affecting docks adjacent to its shoreline. We disagree.

"We begin by reasserting the accepted principle that a municipality's zoning powers are limited by the zoning statutes and the municipality's zoning regulations. As a creature of the state, the . . . [town, whether acting itself or through its planning commission,] can exercise only such powers as are expressly granted to it, or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation. . . . In other words, in order to determine whether [a] regulation . . . was within the authority of the commission to enact, we do not search for a statutory prohibition against such an enactment; rather, we must search for statutory authority for the enactment. . . . Application of this principle has required that we invalidate, on direct appeal, conditions to a special permit that the planning and zoning commission had no authority to impose." (Citations omitted; internal quotation marks omitted.) *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 100–101, 616 A.2d 793 (1992).

The plaintiff argues that the state, pursuant to General Statutes § 22a-359 et seq., has the exclusive jurisdiction to regulate conduct waterward of the mean high water mark, thus preventing enforcement of a municipal regulation affecting use of docks. We agree that the state, by statute, has authority to regulate such conduct. Section § 22a-359 (a) provides in relevant part that "[t]he Commissioner of Environmental Protection shall regulate dredging and the erection of structures and the placement of fill, and work incidental thereto, in the tidal, coastal or navigable waters of the state *waterward of the high tide line*. . . ." (Emphasis added.) To engage in any of the activities described in § 22a-359 (a), the party must first file an application with the commissioner to secure permission to carry out that work. See General Statutes § 22a-361 (a).[7] Accordingly,

---

[7] General Statutes § 22a-361 (a) provides in relevant part: "No person, firm or corporation, public, municipal or private, shall dredge, erect any structure, place any fill, obstruction or encroachment or carry out any work

construction of the docks is within the jurisdiction of the state.[8]

Our analysis, however, is incomplete without considering the entire statutory scheme. The state has manifested its intent to delegate to municipalities located adjacent to Long Island Sound a part of the duty to regulate waterward of the mean high water mark. General Statutes § 22a-113k (a) permits municipalities, including Milford, to establish a harbor management commission, which shall designate that "area within the territorial limits of the municipality and *below the mean high water that shall be within the jurisdiction of a commission . . . ." (Emphasis added.) Pursuant to § 22a-113m, a harbor management commission has the authority to enact a harbor management plan, which may include provisions for the "orderly, safe and efficient allocation of the harbor for boating . . . ." General Statutes § 22a-113n (a). When a municipality has enacted such a plan, and the commissioner of environmental protection has approved it, any recommendation made pursuant to that plan becomes binding. General Statutes § 22a-113n (b);[9] see also General Stat-

incidental thereto or retain or maintain any structure, dredging or fill, in the tidal, coastal or navigable waters of the state *waterward of the high tide line* until such person, firm or corporation has submitted an application and has secured from said commissioner a certificate or permit for such work and has agreed to carry out any conditions necessary to the implementation of such certificate or permit. . . ." (Emphasis added.)

[8] We note that our conclusion is limited to activities occurring waterward of the high tide mark, as activities occurring within the coastal boundary and landward of the mean high water mark may be regulated by the municipality in accordance with coastal site plans pursuant to General Statutes §§ 22a-101 (a) and 22a-105 (b).

[9] General Statutes § 22a-113n (b) provides in relevant part: "Upon adoption of the plan, any recommendation made pursuant to this section shall be binding on any official of the state, municipality or any other political subdivision when making regulatory decisions or undertaking or sponsoring development affecting the area within the commission's jurisdiction, unless such official shows cause why a different action should be taken."

utes § 22a-361 (c).[10] Here, the city has established a harbor management commission, which has enacted a harbor management plan. Accordingly, the terms of that plan were binding on the commissioner of environmental protection when he issued the DiPietros a permit to construct docks.

This court has recognized the authority of the city to delegate to the harbor management commission the duty of determining the number of permissible boat slips that may be erected. *Oakbridge/Rogers Avenue Realty, LLC* v. *Planning & Zoning Board*, 78 Conn. App. 242, 826 A.2d 1232 (2003). Thus, the city acted within its authority to enact the zoning regulation designating that "[t]he number of boat slips, berths, moorings and similar spaces proposed shall be consistent with the Milford Harbor Management Plan as determined by the Milford Harbor Management Commission . . . ." Milford Zoning Regs., § 3.1.2.17 (1). The harbor management plan defines slip as a "berthing space for a *single* vessel alongside a pier, finger float or walkway." (Emphasis added.) Milford Harbor Management Plan, article II. Therefore, the permit granted by the commissioner of environmental protection and approved by the harbor management commission is subject to the terms of the harbor management plan, including the definition restricting a slip to a berthing space for only one boat. Moreover, the record reveals that the commissioner of environmental protection cautioned the plaintiff that he still must comply with applicable federal and local permit requirements.[11]

---

[10] General Statutes § 22a-361 (c) provides that when the commissioner of environmental protection carries out its duty to act on applications for permits to dredge or to erect structures in the navigable waters of this state, the regulations enacted to do so must be consistent with General Statutes §§ 22a-113k to 22a-113t, the statutes sharing the responsibility for regulating the waters with harbor management commissions.

[11] The permit issued by the commissioner of environmental protection stated: "The issuance of this permit does not relieve the permittee of his obligations to obtain any other approvals required by applicable federal, state and local law." The letter accompanying that permit stated: "If you

The defendant's June 26, 1997 application for a zoning permit merely included the proposed construction of the six boat slips allowed by the January 17, 1995 permit, which had been approved by the harbor management commission on November 17, 1995. The harbor management commission recognized that the January 17, 1995 permit issued to the plaintiff was in compliance with the plan, which clearly contained the definition limiting a slip to a space for one boat. "The language of the ordinance is construed so that no clause or provision is considered superfluous, void or insignificant." (Internal quotation marks omitted.) *Vivian* v. *Zoning Board of Appeals*, supra, 77 Conn. App. 345. We cannot, therefore, conclude that the permit approved by the commissioner of environmental protection is not subject to the terms and conditions contained within the plan.

B

The plaintiff next makes the related claim that the city lacks jurisdiction to regulate conduct waterward of the mean high water mark because the state has preempted the city's ability to do so. We disagree.

"[A] local ordinance is preempted by a state statute whenever the legislature has demonstrated an intent to occupy the entire field of regulation on the matter . . . or . . . whenever the local ordinance irreconcilably conflicts with the statute. . . . Whether an ordinance conflicts with a statute or statutes can only be determined by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives." (Internal quotation marks omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 232, 662 A.2d 1179 (1995).

---

have not already done so, you should contact your local Planning and Zoning Office and the U.S. Army Corps of Engineers to determine local and federal permit requirements on your project, if any."

The plaintiff first argues that the state has manifested its intent to fully occupy the field of regulating conduct waterward of the mean high water mark. Giving effect to the plain and unambiguous nature of the statutes described in part I (a); see *Urbanowicz* v. *Planning & Zoning Commission*, supra, 87 Conn. App. 287; municipal action in furtherance of the city's statutory responsibilities is not preempted by the state's jurisdiction. The statutory scheme, as described, demonstrates that the state did not intend to fully occupy the field because it expressly delegated the responsibility of regulation with the harbor management commissions it created. See General Statutes § 22a-113k.

The plaintiff next argues that the city's order irreconcilably conflicts with the state's statutory scheme because the order allows municipal authorities to control areas within the state's exclusive jurisdiction. We cannot conclude that regulations contained within the harbor management plan enacted pursuant to § 22a-113n irreconcilably conflict with the state's statutory authority when the commissioner of environmental protection is required by § 22a-113m to give approval to the plans. Here, the commissioner has permitted the plaintiff to construct six finger floats,[12] which has not been interfered with by the defendant. Rather, the defendant is enforcing the terms of the plan adopted through the statutory scheme of regulation by the harbor management commission and approved by the commissioner of environmental protection. No irreconcilable conflict, therefore, exists when each agency has carried out its statutory duties.

C

The plaintiff next claims that the city exceeded its statutory police power by exercising authority over use

---

[12] We note that the permit from the state did not explicitly grant the plaintiff permission to dock twelve boats at the six slips.

of the plaintiff's docks waterward of the mean high tide mark. We disagree.

General Statutes § 8-3 (e) gives the zoning commission of a municipality the authority to determine how zoning regulations shall be enforced. "If the owner fails to abide by the zoning regulations, the Milford zoning enforcement officer may take action to enforce the regulations or the board may revoke the special permit, as it is entitled to do pursuant to § 7.2.9 of the Milford zoning regulations." *Oakbridge/Rogers Avenue Realty, LLC* v. *Planning & Zoning Board,* supra, 78 Conn. App. 249–50. Here, the cease and desist order, however, was issued by the assistant city planner, which is permitted by § 8.2.2 of the Milford zoning regulations.[13] Having concluded that the city had the authority to enact the regulations at issue in this case, we further conclude that the city did not exceed its statutory police power in enforcing those regulations against the plaintiff through a cease and desist order.

II

The plaintiff next claims that the defendant's decision was arbitrary and lacked support in the record. We do not find that argument persuasive.

"Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The [Appellate Court and] trial court [must] decide whether the board correctly interpreted the sec-

---

[13] Section 8.2.2 of the Milford zoning regulations provides in relevant part: "The . . . Assistant City Planner shall have the responsibility and authority to enforce the provisions of these regulations in the same capacity as the Zoning Enforcement Officers in the performance of the Zoning Enforcement Officer's duties and functions in the absence of the Zoning Enforcement Officer and at such times as circumstances may require."

tion [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. . . .

"[C]ourts are not to substitute their judgment for that of the board, and . . . the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly made after a full hearing . . . . The trial court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support [the board's] findings. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . Where the board states its reasons on the record we look no further. . . . Where, however, the board has not articulated the reasons for its actions, the court must search the entire record to find a basis for the board's decision. . . . More specifically, the trial court must determine whether the board has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) *Oakbridge/Rogers Avenue Realty, LLC* v. *Planning & Zoning Board,* supra, 78 Conn. App. 247–48. We, in turn, must determine whether the court properly concluded that the defendant's decision to enforce the cease and desist order was arbitrary, illegal or an abuse of discretion. The evidence, however, to support any such decision must be substantial. See id. "In light of the existence of a statutory right of appeal from the decisions of local zoning authorities, however, a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty . . . ." (Internal quotation marks omitted.) *Kalimian* v. *Zoning Board of Appeals,* 65 Conn. App.

628, 631, 783 A.2d 506, cert. denied, 258 Conn. 936, 785 A.2d 231 (2001).

The plaintiff first frames his argument in terms of the same jurisdictional defects raised throughout. This court having concluded that the city has the authority, delegated to it by the state, to regulate use of the docks through the harbor management commission, and can enforce those regulations, the plaintiff's argument does not succeed.

The plaintiff next argues that the inconsistency in the language used by the state permit and the harbor management plan leaves the defendant without an adequate basis for its conclusion. Specifically he argues that, even if the city had the authority to regulate conduct occurring waterward of the mean high water mark, the state's permit approving six "finger floats," following his application to the city for six "slips," is not subject to the regulations contained within the harbor management plan. We disagree. The harbor management commission approved the plaintiff's application, thus bringing the plaintiff under the ambit of the harbor management plan and the restriction that a slip is defined as a "berthing space for a *single* vessel alongside a . . . *finger float*. . . ." (Emphasis added.) Milford Harbor Management Plan, article II. "[R]egulations must be interpreted so as to reconcile their provisions and make them operative so far as possible. . . . When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results." (Citation omitted; internal quotation marks omitted.) *Planning & Zoning Commission* v. *Gilbert*, 208 Conn. 696, 706, 546 A.2d 823 (1988). We cannot conclude that the defendant's interpretation of the definition containing both the terms "slip" and "finger float" as applicable to the plaintiff's permits is without suffi-

cient support in the record or renders an unreasonable or bizarre result.

The judgment is affirmed.

In this opinion the other judges concurred.