**TELECOMMUNICATIONS ASSOCI-ATION OF INDIANA, INC., Appellant (Intervenor),**

v.

**INDIANA BELL TELEPHONE COMPANY and GTE North Incorporated, et al., Appellees (Respondents).**

No. 93A02–8910–EX–551.

Court of Appeals of Indiana, Second District.

Nov. 7, 1991.

Robert L. Thompson, Robert L. Thompson, P.C., Fort Wayne, for appellant Telecommunications Ass'n of Indiana, Inc.

Richard L. Besore, Associate Gen. Counsel, Indiana Bell Telephone Co., Indianapolis, Richard E. Deer, Stanley C. Fickle, Michael G. Banta, Teresa E. Morton, Barnes & Thornburg, Indianapolis, for appellee Indiana Bell.

David C. Lee, Associate Gen. Counsel, Sue E. Stemen, Atty., Westfield, for appellee GTE North Inc.

BUCHANAN, Judge.

### CASE SUMMARY

Intervenor-appellant Telecommunications Association of Indiana, Inc. (the Association) appeals from the Indiana Utility Regulatory Commission's (the Commission) order approving the respondents-appellees Indiana Bell Telephone Company's (Bell) and GTE North Incorporated's (GTE) tariffs, claiming the Commission's approval was contrary to law.

We affirm.

## FACTS

The facts most favorable to the Commission's decision reveal that the Association is a trade association comprised of companies engaged in telecommunication related businesses. The Commission initiated proceedings to investigate the regulatory procedures that would be appropriate for telephone companies that desired to provide customer specific offerings (CSO's) to large corporate and government consumers that required special equipment and services.

All of the Indiana telephone companies that provided local exchange service (Locals) were named as respondents in the proceeding. Bell and GTE were two Locals that had submitted proposed CSO tariffs. The Commission modified Bell's and GTE's proposed tariffs, and issued an interim order approving the modifications. The Commission held further hearings to determine comprehensive standards for regulating CSO's as a whole. After the hearings, the Commission entered its final order, and adopted its interim orders to the extent not modified by the final order.

The Commission determined that the market for CSO's was highly competitive. The Locals had to compete against unregulated businesses that were able to provide the hardware and software to satisfy the unique switching, transport, and data transmission requirements of large consumers. The Association's members included many of the companies that competed against the Locals in the CSO market.

The Commission's final order detailed the methods the Locals could use to determine their costs when calculating their rates for CSO contracts, but the Commission did not require preapproval of the rates charged by the Locals. It freed the Locals from the normal regulatory prerequisites when they entered into CSO contracts. The Commission specifically determined that the normal regulatory procedures, such as hearings and public disclosure, worked a competitive disadvantage on the Locals. The Commission declined to exercise part of its jurisdiction over the rates charged by the Locals to the extent that the jurisdiction was inconsistent with the approved tariffs.

## ISSUES

1. Whether the Association has standing to bring this appeal?

2. Whether the tariffs approved by the Commission were contrary to law?

3. Whether the Association should be assessed appellate attorney's fees for bringing a frivolous appeal?

## DECISION

*ISSUE ONE*—Does the Association have standing to appeal the Commission's actions?

*PARTIES' CONTENTIONS*—Indiana Bell asserts that the Association lacks standing to bring this appeal because it did not have a substantial interest in the Commission's order. The Association replies that because the Commission allowed it to intervene, it has standing to appeal the Commission's order.

*CONCLUSION*—The Association has standing.

■ This question is resolved by consulting the relevant statute. Ind.Code 8–1–3–3 (1988) relates to the standing of parties on appeal. It provides, in pertinent part: "Any party applicant, *intervenor* or protestant in the proceedings had before the commission in the matter from which the appeal is taken shall be and have the rights of a party on appeal...." IC 8–1–3–3 (emphasis supplied). The Commission allowed the Association to intervene, *record* at 258–59, so the Association has "the rights of a party" in accordance with the statute. The Association's presence here is explicitly authorized by the statute.

*ISSUE TWO*—Was the Commission's order contrary to law?

*PARTIES' CONTENTIONS*—The Association claims that the Commission was not authorized to allow regulated utilities to charge rates that did not receive prior regulatory approval. Bell responds that specific statutory provisions authorize the Commission's actions.

*CONCLUSION*—The Commission properly approved the tariffs.

■ The Association assaults the Commission's actions by wielding the well-established rule of utility regulation that requires preapproval of the rates charged by a utility. *See City of Evansville v. S. Ind. Gas & Elec. Co.* (1975), 167 Ind.App. 472, 339 N.E.2d 562. In *Evansville*, this court determined that the Commission's predecessor could not authorize an automatic rate adjustment mechanism linked to natural gas prices that functioned without prior regulatory approval.

Bell shields itself behind Ind.Code 8–1–2.6–1 through –8 (1988), relating to competition in the provision of telephone services, statutes never before construed by the courts of this state. Our reading of the relevant statutory provisions leads us to the conclusion that the Commission acted properly.

IC 8–1–2.6–1 summarizes the legislature's intent when it enacted the chapter in 1985. IC 8–1–2.6–1 provides:

"The Indiana general assembly hereby declares that:

(1) the maintenance of universal telephone service is a continuing goal of the commission in the exercise of its jurisdiction;

(2) competition has become commonplace in the provision of certain telephone services in Indiana and the United States;

(3) traditional commission regulatory policies and practices and existing statutes are not designed to deal with a competitive environment;

(4) an environment in which Indiana consumers will have available the widest array of state-of-the-art telephone services at the most economic and reasonable cost possible will necessitate full and fair competition in the delivery of certain telephone services throughout the state; and

(5) flexibility in the regulation of providers of telephone services is essential to the well-being of the state, its economy, and its citizens and that the public interest requires that the commission be authorized to formulate and adopt rules and policies as will permit the commission, in the exercise of its expertise, to regulate and control the provision of telephone services to the public in an increasingly competitive environment, giving due regard to the interests of consumers and the public and to the continued availability of universal telephone service."

Two other, more specific statutes speak directly to the matters at hand. IC 8–1–2.6–2(a) says:

"Notwithstanding any other statute, the commission may:

(1) on its own motion;

(2) at the request of the utility consumer counselor;

(3) at the request of one (1) or more telephone companies; or

(4) at the request of any class satisfying the standing requirements of IC 8–1–2–54;

enter an order, after notice and hearing, that the public interest requires the commission to commence an orderly process *to decline to exercise, in whole or in part*, its jurisdiction over telephone companies or certain *telephone services.*" (Emphasis supplied).

IC 8–1–2.6–3 provides, in pertinent part:

"Notwithstanding any other statute, the commission may:

(1) on its own motion;

(2) at the request of the utility consumer counselor;

(3) at the request of one (1) or more telephone companies; or

(4) at the request of any class satisfying the standing requirements of IC 8–1–2–54;

adopt rules or by an order in a specific proceeding provide for the development, investigation, testing, and utilization of regulatory procedures or generic standards with respect to telephone companies or services."

These statutes expressly allow the Commission to act in contravention of the rule requiring prior approval of a utility's rates. They grant the Commission the discretion to decline to exercise its jurisdiction and to

adopt generic standards with respect to the Local's CSO contracts.

The Association's counter thrusts are unavailing. It says the Commission was not declining to exercise its jurisdiction because it retained plenary jurisdiction to investigate, modify or disapprove any of the CSO contracts offered. This argument ignores the express language of the Commission's final order, *record* at 1557, and the interim orders, *record* at 811, 816, approved and incorporated into the Commission's final order. *Record* at 1573. IC 8–1–2.6–2(a) explicitly allows the Commission to decline to exercise its jurisdiction, *in part*, over certain *telephone services*, and the Commission did just that.

■ The Association sees IC 8–1–2.6–3 as an impermissible delegation of legislative authority to an executive body. However, a delegation of authority is only impermissible if sufficient standards are not imposed to guide the agency in the exercising of the statutory authority. *Indiana Alcoholic Beverage Com'n v. McShane* (1976), 170 Ind.App. 586, 354 N.E.2d 259, *trans. denied.* But we conclude that IC 8–1–2.6–1 through –8 contain sufficient standards to guide the Commission in the exercising of its authority under the chapter. The legislature expressly recognized the need for flexibility in the regulation of certain aspects of the telecommunications industry, and IC 8–1–2.6–3 provides specific factors to guide the Commission during its explorations of possible regulatory schemes.

The Association views IC 8–1–2.6–3 as being solely a method by which the legislature could receive more information on the statutory revisions needed for the telephone utilities, pointing to IC 8–1–2.6–4, which establishes a regulatory flexibility committee comprised of state legislators. Our reading of IC 8–1–2.6–3 does not coincide with the Association's. Although the Commission is to report to the committee, no limitations on the Commission's ability to explore new regulatory methods can be inferred from the statutes.

The Association's concerns with possible unfair competition from the Locals have not been ignored. The Commission retained jurisdiction over the Locals' CSO contracts to monitor the tariff's effects, and IC 8–1–2.6–2(c) allows the Commission to reassert its jurisdiction if it becomes necessary. In the aggregate, the Commission's actions comport with the express intent of the legislature, so the approval of the tariffs was not contrary to law.

*ISSUE THREE*—Should the Association pay appellate attorney's fees?

*PARTIES' CONTENTIONS*—GTE argues that the Association's appeal was frivolous because the statutes plainly authorize the Commission's actions. The Association retorts that it "will let the record speak for itself" as to whether sanctions should be imposed. *Reply brief* at 30.

*CONCLUSION*—Punitive sanctions are not warranted.

■ GTE seeks appellate attorneys' fees pursuant to Ind.Rules of Procedure, Appellate Rule 15(G). While we have found the Association's arguments to be without merit, they are not frivolous. The basic issue presented is one of first impression, as it concerns the meaning of various statutes that have not yet been construed. Mindful of the watchful eye of the Supreme Court's opinion in *Orr v. Turco Mfg. Co., Inc.* (1987), Ind., 512 N.E.2d 151, we find sanctions are not justified. "[P]unitive sanctions may not be imposed to punish lack of merit unless an appellant's contentions are utterly devoid of all plausibility." *Id.* at 153 (footnote omitted).

The Commission's decision is affirmed.

SHIELDS and CONOVER, JJ., concur.