# THOMAS P. CLIFFORD III *v.* PLANNING AND ZONING COMMISSION OF THE CITY OF ANSONIA ET AL.
## (SC 17391)

Sullivan, C. J., and Borden, Norcott, Katz, Palmer,
Vertefeuille and Zarella, Js.*

---

\* The listing of justices reflects their seniority status on this court at the time of oral argument.

Also, this case originally was argued before a panel of this court consisting of Chief Justice Sullivan and Justices Borden, Katz, Palmer and Vertefeuille. Thereafter, the court, pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the case be considered en banc. Accordingly, Justices Norcott and Zarella were added to the panel, and they have read the record, briefs and transcript of the oral argument.

Argued October 19, 2005—officially released October 31, 2006

*Gregory J. Stamos*, for the appellant (plaintiff).

*Kevin M. Blake*, corporation counsel, with whom, on the brief, was *Nathalie Feola-Guerrieri*, for the appellee (named defendant).

*Reuben S. Midler*, for the appellee (defendant Complete Construction, Inc.).

*Marvin P. Bellis* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Michael A. Zizka* filed a brief for the Planning and Zoning Section of the Connecticut Bar Association as amicus curiae.

*Opinion*

BORDEN, J. This is a zoning appeal that the Appellate Court certified for review pursuant to General Statutes § 8-9.[1] The plaintiff, Thomas P. Clifford III, appeals from the judgment of the trial court dismissing his appeal from the decision of the defendant planning and zoning commission (commission) of the city of Ansonia (city) approving the site plan application of the defendant Complete Construction, Inc. (Complete). The plaintiff claims that the trial court improperly: (1) ruled that the commission had not abused its discretion in declining to hold a public hearing on Complete's application; (2) denied his motion to introduce as additional evidence documents pertaining to the commission's original 1998 site plan approval for the property involved; and (3) ruled that the storage of explosives on a contractor's

---

[1] General Statutes § 8-9 provides: "Appeals from zoning commissions and planning and zoning commissions may be taken to the Superior Court and, upon certification for review, to the Appellate Court in the manner provided in section 8-8."

Following the Appellate Court's grant of certification, we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

yard was a permitted use under the city's zoning ordinances. We agree with the plaintiff's second claim, and, therefore, we reverse the judgment of the trial court.[2]

The record reveals the following relevant facts and procedural history. Complete owns property located at 1 River Street in the city (River Street property). The River Street property, which is located in a heavy industry zone, is subdivided into four lots, including one parcel designated as "lot 3," which contains approximately forty-six acres of land. Lot 3 is a contractor's yard, a permitted use under the zoning ordinances. The plaintiff owns residential property that abuts the River Street property and is located at 10 South Westwood Road in the city. At the regular June 25, 2001 meeting of the commission, Complete described to the commission a proposal to store dynamite on lot 3. The chairman of the commission directed Complete to submit a site plan application. On July 25, 2001, Complete filed an application for site plan approval with the commission "for the installation of two (2) bunkers for the storage of dynamite within the contractor's storage yard located on lot 3." On August 27, 2001, during its regular meeting, the commission approved Complete's application (2001 site plan approval). During the meeting, the members of the commission considered whether to hold a public hearing on the matter, and decided not to do so.

The plaintiff appealed from the decision of the commission to the Superior Court pursuant to General Statutes § 8-8 (b).[3] In the trial court, the plaintiff moved

---

[2] Because they are likely to arise on the remand, we also address the first and third claims raised by the plaintiff.

[3] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board, including a decision to approve or deny a site plan pursuant to subsection (g) of section 8-3, may take an appeal to the superior court for the judicial district in which the municipality is located. . . ."

pursuant to § 8-8 (i),[4] seeking to add the following to the return of record: (1) the minutes from the June 29, 1998 meeting of the commission approving Complete's 1998 site plan application for the River Street property; (2) the written decision of the commission approving the 1998 site plan application; and (3) the written decision of the city's inland wetlands commission approving the 1998 site plan application. The trial court, *Cremins, J.*, denied the motion. Subsequently, the plaintiff moved pursuant to § 8-8 (k) (2), for permission to introduce evidence in addition to the contents of the record.[5] Specifically, the plaintiff sought to introduce into evidence the commission's 1998 site plan approval for the River Street property and the inland wetlands commission's 1998 site plan approval for the same property (1998 site plan approvals). Relying on the prior decision of the trial court, *Cremins, J.*, denying the plaintiff's motion to amend the record, the trial court, *Hon. George W. Ripley II*, judge trial referee, denied the motion. Following a hearing on the matter, the trial court, *Hon. George W. Ripley II*, judge trial referee, dismissed the plaintiff's appeal. This certified appeal followed.

I

The plaintiff first claims that the commission abused its discretion in deciding not to hold a public hearing on Complete's 2001 site plan application. We disagree.

The following additional facts are relevant to the resolution of this claim. Complete's proposal to store

---

[4] General Statutes § 8-8 (i) sets forth the procedures by which a zoning board shall transmit the record to the trial court and provides in relevant part: "The court may require or permit subsequent corrections or additions to the record."

[5] General Statutes § 8-8 (k) provides in relevant part: "The court shall review the proceedings of the board and shall allow any party to introduce evidence in addition to the contents of the record if . . . (2) it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. . . ."

explosives on its River Street property was first raised in a regular meeting of the commission on June 25, 2001. The minutes of this meeting reveal that, after Complete had described its proposal, the chairman of the commission directed it to submit a formal site plan application to the commission. The minutes of the August 27, 2001 meeting reflect that a representative of Complete attended the meeting to advocate on behalf of the commission's approval of the application. During the discussion regarding the application, the chairman of the commission stated that "this is a new proposal to [the city] and it should have a public hearing." In response, another member of the commission noted that the determination of whether it is in the public interest to hold a public hearing lies in the discretion of the commission, and a discussion followed concerning the possible risks associated with the storage of dynamite on the site and possible safeguards that could be employed to minimize those risks. During the discussion of whether to hold a hearing, Spero Jordinandes, in his official capacity as the alderman for the fifth ward in the city, who was present at the meeting, informed the members of the commission that he and his constituents opposed the granting of the application. In response, Nunzio Parente, a member of the commission, stated that there was no need for a public hearing. Parente further noted that the "[a]dministration," Jordinandes, and the neighbors all were opposed to the proposed dynamite bunker, and concluded that the commission should not hold a public hearing because a hearing would "incite people instead of having them come to hear what is happening."[6] The commission then voted

---

[6] We disagree with the plaintiff's contention that Parente's statement should be attributed to the commission as its reason for its decision not to hold a public hearing. We have stated that, "[w]hen a zoning agency has stated its reasons for its actions, a court should not reach beyond those stated purposes to search the record for other reasons supporting the commission's decision. . . . Rather, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply

to approve the application without holding a public hearing.

It is axiomatic that the review of site plan applications is an administrative function of a planning and zoning commission. *Norwich* v. *Norwalk Wilbert Vault Co.*, 208 Conn. 1, 12, 544 A.2d 152 (1988). When a commission is functioning in such an administrative capacity, a reviewing court's standard of review of the commission's action is limited to whether it was "illegal, arbitrary or in abuse of [its] discretion . . . ." *Forest Construction Co.* v. *Planning & Zoning Commission*, 155 Conn. 669, 676, 236 A.2d 917 (1967); accord R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 33.3, p. 159. In determining whether a zoning commission's action was illegal, arbitrary or in abuse of its discretion, a reviewing court's principal inquiry is whether the commission's action was in violation of the powers granted to it or the duties imposed upon it. See *Zenga* v. *Zebrowski*, 170 Conn. 55, 58, 364 A.2d 213 (1975) (" 'function of the court is to determine whether or not [the board] acted illegally . . . because the conduct of the board would be in violation of the powers granted to and duties imposed upon it' "); R. Fuller, supra, § 33.1, p. 152 ("words 'arbitrarily or in abuse of its discretion' is a form of illegal conduct where the agency's action is in violation of the powers granted to it and the duties imposed upon it"); see also *Belanger* v. *Planning & Zoning Commission*,

under the zoning regulations. . . . The principle that a court should confine its review to the reasons given by a zoning agency . . . applies [only] where the agency has rendered a formal, official, collective statement of reasons for its action. . . . It does not apply to mere utterances of individual members of the agency." (Citations omitted; internal quotation marks omitted.) *Harris* v. *Zoning Commission*, 259 Conn. 402, 420, 788 A.2d 1239 (2002); see *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 544, 600 A.2d 757 (1991). Thus, Parente's isolated remarks do not constitute such a formal, official, collective statement by the commission.

64 Conn. App. 184, 192, 779 A.2d 833 (2001) ("[w]e give to lay administrative boards wide discretion on the inner workings of their bodies as long as no regulation or statute is violated"). In addition, this court has stated that "[t]here is a strong presumption of regularity in the proceedings of a public body such as a municipal planning and zoning commission . . . ." (Citation omitted; internal quotation marks omitted.) *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* 206 Conn. 554, 573–74, 538 A.2d 1039 (1988). Thus, the issue before us in the present case is limited to whether the commission's decision not to hold a public hearing on Complete's site plan application was such a violation of the powers granted to it or the duties imposed upon it that it rebuts the presumption of regularity in the procedure by which it approved the application. Cf. *Winchester Woods Associates* v. *Planning & Zoning Commission,* 219 Conn. 303, 311–12, 592 A.2d 953 (1991) (zoning commission abused its discretion by not examining all factors it was required to examine in exercising its discretion to reject subdivision application under General Statutes § 8-26); *Vaszauskas* v. *Zoning Board of Appeals,* 215 Conn. 58, 63–65, 574 A.2d 212 (1990) (zoning board of appeals abused discretion because it acted beyond its authority by granting variance subject to satisfaction of condition that was impossible to satisfy); *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* supra, 568–74 (zoning commission abused discretion by holding public hearings after time when General Statutes § 8-7d [a] mandates that such hearings be closed); 7 P. Rohan, Zoning and Land Use Controls (1992) § 52.05 [3], pp. 52-41 through 52-43 ("court will overturn a zoning determination which is beyond the ambit of the board's legislatively prescribed powers, or where it has failed to follow its own prescribed procedures").

The parties do not dispute that the city's zoning regulations impose no requirement upon the commission

to hold a public hearing under these circumstances. In fact, General Statutes § 8-3, which governs the approval of site plan applications, imposes no requirement upon a zoning commission to hold a public hearing on any site plan application. Instead, local zoning regulations determine under what circumstances a public hearing is required. See *October Twenty-Four, Inc.* v. *Planning & Zoning Commission*, 35 Conn. App. 599, 602, 646 A.2d 926 (1994). Our examination of the city's zoning ordinances reveals that a public hearing is required only for the approval of site plans in special commercial districts. See Ansonia Zoning Ordinances § 510.1.1. Because the River Street property is not in a special commercial district, but rather is in a heavy industrial zone, the local zoning ordinances do not impose an obligation upon the commission to hold a public hearing on Complete's site plan application. Moreover, no statute or ordinance establishes criteria for the commission to consider in determining whether to hold a nonmandated public hearing.[7]

In addition, the commission's failure to hold a public hearing on Complete's site plan application did not violate any duty imposed by the common-law requirement of fundamental fairness in administrative proceedings. See generally *Grimes* v. *Conservation Commission*, 243 Conn. 266, 273 n.11, 703 A.2d 101 (1997). This court previously has stated that when a zoning commission is acting in an administrative capacity and not in a legislative, judicial or quasi-judicial capacity, it is not required "to observe the safeguards, ordinarily guaranteed to the applicants and the public, of a fair opportu-

---

[7] We note that our statutes specifically provide a planning commission with the authority to decide whether to hold a public hearing on a subdivision application. See General Statutes § 8-26 ("commission may hold a public hearing regarding any subdivision proposal if, in its judgment, the specific circumstances require such action"). By contrast, § 8-3 (g) does not provide a zoning commission with similar discretionary authority to hold a public hearing on a site plan application.

nity to cross-examine the witnesses, to inspect documents presented, and to offer evidence in explanation or rebuttal and of the right to be fully apprised of the facts upon which action is to be taken . . . ." *Forest Construction Co.* v. *Planning & Zoning Commission,* supra, 155 Conn. 674. When a zoning commission is acting in an administrative capacity and no statute or regulation requires a public hearing, it would only hold a public hearing "[a]s a matter of grace and not of duty . . . ." *Armstrong* v. *Zoning Board of Appeals,* 158 Conn. 158, 168, 257 A.2d 799 (1969).

Moreover, the purposes of a public hearing were satisfied in the present case because the commission received comments from the public regarding Complete's plan to store explosives. This court has stated that the purpose of a local zoning body in holding a public hearing is "to afford an opportunity to interested parties to make known their views and to enable the board to be guided by them." (Internal quotation marks omitted.) *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* supra, 206 Conn. 567; *Kleinsmith* v. *Planning & Zoning Commission,* 157 Conn. 303, 311, 254 A.2d 486 (1968); *Neuger* v. *Zoning Board,* 145 Conn. 625, 630, 145 A.2d 738 (1958); see also 2 E. Yokley, Zoning Law and Practice (4th Ed. 2001) § 9-6, p. 9-24 (public hearing requires that "public must have the right to attend the meeting and be heard"). In the present case, the public's views of Complete's plan were made known at the two commission meetings during which the proposal was discussed. At the commission's June 25, 2001 meeting, a city resident, Bart Flaherty, spoke in opposition to the proposed explosives storage based on his concerns about the safety of the storage and transportation of explosives. In addition, as we previously noted, Jordinandes spoke before the commission at its August 27, 2001 meeting about his opposition to the storage of explosives on the River Street property,

as well as the opposition of his constituents to the plan. Furthermore, the record reveals that the commission was guided by these concerns, as its members closely questioned Complete regarding safety issues, and the commission ultimately conditioned its approval of Complete's site plan application on Complete taking certain steps to address the commission's safety concerns.

Although a public hearing might have provided additional information relevant to the commission's determination of whether Complete's site plan application should have been approved; see part II of this opinion; the commission was under no duty imposed by a statute, ordinance, regulation or the common law to hold such a hearing. Moreover, the commission's conditional approval of Complete's site plan application addressed the main issue implicated by the application: the safety of storing explosives on the River Street lot. Accordingly, we cannot conclude, under the circumstances of the present case, that the commission abused its discretion by not holding a public hearing on Complete's site plan application.[8]

---

[8] This conclusion is consistent with the decisions of courts of both this and other jurisdictions that have considered whether an administrative agency abused its discretion by failing to hold a public hearing. Generally, courts have concluded that administrative agencies have not abused their discretion by failing to hold a public hearing if they were not obligated to do so pursuant to a statute or an ordinance. Conversely, agencies have been determined to have abused their discretion only when they have failed to hold a mandated public hearing in violation of a statute or ordinance. Compare *Burke* v. *Board of Representatives*, 148 Conn. 33, 37–40, 166 A.2d 849 (1961) (concluding that board of representatives did not abuse discretion by not giving notice of any hearings and failing to hold hearings prior to rejecting amendment to zoning map because it was under no legal obligation to do so), *Swensson* v. *Planning & Zoning Commission*, 23 Conn. App. 75, 78–79, 579 A.2d 113 (1990) (rejecting claim that commission was required to hold public hearing for subdivision application because General Statutes § 8-26 provides commission with discretion on when to hold public hearing), *Beck* v. *City Council*, 30 Cal. App. 3d 112, 115–16, 106 Cal. Rptr. 163 (1973) (city council did not abuse legislative discretion in manner to warrant judicial intrusion by adopting resolution without public hearing because it was under no obligation to hold public hearing), *Citizens Action Coalition of Indiana, Inc.* v.

## II

The plaintiff next claims that the trial court improperly denied his motion to introduce evidence in addition to the contents of the record pursuant to § 8-8 (k) (2). We agree.

The following additional facts are relevant to our analysis. On June 4, 1998, the inland wetlands commission approved Complete's application for a permit to conduct construction on the River Street property, which adjoins a wetland and watercourse. The permit was granted, however, with certain conditions. Specifically, the approval of the inland wetlands commission was limited to only the activity attested to at the time of the application, barred any further structural development on the property, and required a 100 foot buffer of undisturbed area around the wetlands and watercourse. The approval further expressly prohibited the storage of hazardous materials or demolition materials on the site and provided that the only storage facility

*Northern Indiana Public Service Co.*, 582 N.E.2d 387, 391 (Ind. App. 1991) (state utility regulatory commission did not abuse discretion by refusing to hold public hearing before approving and implementing second phase of utility rate increase because it was under no obligation to hold such hearings), *Reynolds v. Liccardi*, 504 So. 2d 654, 656 (La. App.) (governing authority of parish did not abuse discretion by failing to hold public hearing regarding zoning change because statutory scheme did not require it to do so), cert. denied, 508 So. 2d 73 (La. 1987) and *State ex rel. Coffman v. Public Service Commission*, 121 S.W.3d 534, 542 (Mo. App. 2003) (public service commission did not abuse discretion by failing to comply with request to hold public hearing because statute under which it was operating did not contemplate it) with *Kurren Appeal*, 417 Pa. 623, 630, 208 A.2d 853 (1965) (zoning ordinance was invalid where statute mandated that public hearing be held prior to adoption and city council adopted ordinance without holding public hearing) and *Save Our Local Environment II v. Board of Supervisors*, 137 Pa. Commw. 505, 508–509, 587 A.2d 30 (township's board of supervisors abused discretion in failing to hold public hearing before voting on amendment to zoning ordinance where statute required it to hold public hearings if amendment was changed substantially after initial public hearing was complete), appeal denied sub nom. *Beltrami Enterprises, Inc. v. Board of Supervisors*, 529 Pa. 624, 600 A.2d 539 (1991).

that would be allowed on the site was a 2000 gallon fuel oil storage tank. Finally, the approval required that in order for Complete to develop the site further, it would first have to seek the approval of the inland wetlands commission. Subsequently, on June 29, 1998, the commission approved Complete's site plan application to construct and to maintain a contractor's yard on the River Street property. In its approval of the site plan application, however, the commission expressly incorporated by reference the conditions of the permit of the inland wetlands commission. In explaining the reasons underlying its conditional approval of the site plan application, the commission noted: "In reaching its decision, the [c]ommission considered the findings of the [i]nland [w]etlands [c]ommission and the decision of said agency reached at its meeting of June 4, 1998."

This information was never presented to the commission in either of the meetings during which Complete's proposal to install the dynamite bunker on the River Street property was discussed, not in the preliminary discussion that took place on June 25, 2001, nor in the August 27, 2001 discussion on the site plan application itself. Because there was no public hearing on the matter, the plaintiff did not have the opportunity to introduce that evidence. Therefore, neither of the 1998 site plan approvals was part of the record on appeal in the trial court. The plaintiff twice attempted to present evidence of the 1998 site plan approvals to the court: first, by moving to amend the record pursuant to § 8-8 (i); and second, by moving for permission to present additional evidence pursuant to § 8-8 (k) (2). As noted previously in this opinion, the trial court, *Cremins*, *J.*, denied the plaintiff's motion to amend the record pursuant to § 8-8 (i).[9] When the plaintiff subsequently moved pursuant to § 8-8 (k) (2) for permission to intro-

---

[9] The plaintiff does not challenge this ruling in this appeal.

duce evidence in addition to the contents of the record, the trial court, *Hon. George W. Ripley II*, judge trial referee, denied the motion, relying solely on the prior decision of the trial court, *Cremins, J.*, denying the motion to amend the record. It is the denial of the plaintiff's motion to introduce additional evidence pursuant to § 8-8 (k) (2) that is at issue in this appeal.

Section 8-8 (k) provides in relevant part that, in an appeal from a decision of a zoning commission, a reviewing court "shall allow any party to introduce evidence in addition to the contents of the record if . . . (2) it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. . . ." The determination of whether to allow such additional testimony lies in the sound discretion of the trial court, and is subject to review only for abuse of discretion. *Tarasovic* v. *Zoning Commission*, 147 Conn. 65, 69–70, 157 A.2d 103 (1959). In *Tarasovic*, we concluded that it was not an abuse of discretion for the trial court to have refused to allow the introduction of the testimony of a real estate expert in connection with the appeal of a decision of the zoning commission changing the zoning of the subject properties from residential to commercial. Id. The purpose of the offer, we noted, had been simply "to add to the record something which the commission did not have before it." Id., 70. In affirming the trial court's decision, we stated that "[a]n appeal from an administrative tribunal should ordinarily be determined upon the record of that tribunal, and only when that record fails to present the hearing in a manner sufficient for the determination of the merits of the appeal, or when some extraordinary reason requires it, should the court hear evidence." Id., 69. We concluded that neither of those conditions was satisfied in *Tarasovic*, wherein the real estate expert had not testified before the commission and the plaintiffs merely asserted that they should have been allowed as

a matter of right to introduce the additional testimony because there was no stenographic transcription or mechanical recording of the proceedings before the commission. Id., 70.

Similarly, in the present case, the plaintiff sought to introduce on appeal evidence that had not been presented to the commission, namely, the 1998 site plan approvals. The question is whether this evidence was necessary for the equitable disposition of the appeal. For two reasons, we conclude that it was, and, therefore, that the trial court abused its discretion in denying the plaintiff's motion to introduce additional testimony pursuant to § 8-8 (k) (2).

First, the evidence that the plaintiff sought to introduce consisted of information that, viewed on its face, could well have affected the commission's consideration of Complete's site plan application if it had been brought to the commission's attention, because the 1998 site plan approvals revealed conditions that the commission itself previously had imposed upon Complete before Complete would be granted permission to develop the site further. Evidence of specific limitations that the commission itself had placed on Complete's further development on the site is precisely the type of information that the commission should have had before it in determining whether to grant the site plan application.[10] Therefore, it was information that was necessary for the equitable disposition of the question before the trial court, namely, whether the commission properly granted Complete's application. Second, because there was no public hearing, the plaintiff did not have the opportunity to present the 1998 site plan approvals for the commission's consideration. The plaintiff's motion pursuant to § 8-8 (k) (2) was his first

---

[10] The record offers no explanation as to why the commission had no record of its own prior proceeding in the 1998 site plan approvals.

reasonable opportunity to bring to the court's attention the limitations on the use of Complete's property that may well have affected the approval of the site plan application. To penalize the plaintiff for the absence in the record of documents that could have affected the commission's decision on the site plan application, when the plaintiff had no reasonable opportunity to bring such documents to the attention of the commission, would be simply unfair and not in accordance with basic principles of equity.

This conclusion, namely, that the trial court abused its discretion in denying the plaintiff's motion pursuant to § 8-8 (k) (2), requires a new hearing on the plaintiff's appeal in the trial court. The plaintiff is entitled to present to the trial court his contentions, based on the newly presented evidence, why the commission should not have granted Complete's application. The commission and Complete are also entitled, however, to present their contentions regarding why that evidence does not undermine the validity of the grant of the application. The court will then be in a position to make an equitable disposition of the appeal.

### III

The plaintiff's final claim is that the trial court improperly concluded that the storage of explosives on the River Street property was a permitted use under the city's ordinances. We agree with the plaintiff that such a use is not expressly permitted under the city ordinances, and that, therefore, the trial court improperly concluded on that basis that it was a permitted use.[11]

---

[11] We first note that the city's zoning ordinances are permissive in nature. As we have recently explained, the significance of such a structure is that "those matters not specifically permitted are prohibited." *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 653, 894 A.2d 285 (2006); see also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 4.10, p. 64.

Section 310 of the Ansonia Zoning Ordinances, entitled, "Schedule of Permitted Uses," provides in relevant part that "[l]and, buildings and other structures in any district shall be used for one or more of the uses specified

in Schedule B as permitted in the district. . . ." Section 310.2 of the Ansonia Zoning Ordinances, entitled, "Prohibited Uses," further provides in relevant part that "[a]ny use not specified in Schedule B as permitted is prohibited. To further assist in the interpretation of Schedule B, the following uses, the listing of which is not intended to be exhaustive, are specifically prohibited . . . ." Section 310 does not list the storage of explosives as a prohibited use. Because the list in that section is not intended to be exhaustive, however, we examine Schedule B to determine whether the storage of explosives is a permitted use. One of the uses listed on Schedule B is "[b]uilding contractors and sub-contractors yards." Although Schedule B does not specify that the uses listed as permitted are principal uses of property, and although the city's zoning ordinances do not contain a definition of principal uses, we note that the uses listed in Schedule B are uses that fit the traditional definition of principal uses as the main, primary or dominant use of the land. See R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 4.19, pp. 79–80. For example, the permitted uses listed include: ambulance services, auto body painting and repair, barbering and hairdressing, bottling plants for water and nonalcoholic beverages, cold storage facilities, and commercial picnic grounds, to name a few. Storage of explosives is not listed as a principal permitted use.

We further note that we find unpersuasive the defendants' argument that, under the zoning ordinances, the storage of explosives is a permitted principal use. The defendants rely on several provisions in the city's zoning ordinances to argue that it may be inferred that the storage of explosives is a permitted use. First, they point to § 310.2, which specifies expressly prohibited uses. We already have noted, however, that the list of prohibited uses is not intended to be exhaustive. Furthermore, § 310.2 of the Ansonia Zoning Ordinances specifically provides that the list of expressly prohibited uses is intended merely to assist in the interpretation of the schedule of permitted uses and that "[a]ny use not specified in Schedule B as permitted is prohibited. . . ." The defendants also rely on § 330.12.2, which implicitly permits outside storage in connection with a heavy industrial use. Section 330.12.2 of the Ansonia Zoning Ordinances, which limits the use of outside storage in heavy industrial districts, provides: "In industrial districts, outside storage areas shall not extend into the area required for setback from a property line, street line or residence district boundary line, and shall be enclosed (except for necessary access drives) by buildings and/or by fences, walls, embankments or evergreen shrubs or trees so as to screen the storage area from view from any other lot or from any street."

Presumably, however, outside storage that already has been deemed to be an accessory use is the only type of storage that would be permitted under this provision. The argument, therefore, begs the question. Finally, the defendants rely on § 355.6 of the Ansonia Zoning Ordinances, which provides: "No material which is dangerous due to explosion, extreme fire hazard or radioactivity shall be used, stored, manufactured, processed,

alternate ground of affirmance on this issue, that the storage of explosives is an accessory use to the principal use of a contractor's yard. We conclude that the record before the commission was sufficient to support the conclusion that the proposed use was a permitted accessory use to the property.

The question that the commission had to determine in deciding whether to approve Complete's site plan application is whether the storage of explosives is an accessory use of a contractor's yard. "[W]hether a particular use qualifies as an accessory use is ordinarily a question of fact for the zoning authority, to be determined by it with a liberal discretion." (Internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 669, 894 A.2d 285 (2006). Therefore, the commission's decision approving Complete's site plan application is subject to a very narrow, deferential scope of review. If a zoning commission has stated the basis for its actions, a reviewing court must determine only "whether the [commission] correctly interpreted the [regulation] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the [commission] is endowed with . . . liberal discretion, and its action is subject to review . . . only to determine whether it was unreasonable, arbitrary or illegal. . . . Moreover, the plaintiffs bear the burden of establishing that the [commission] acted improperly." (Internal quotation marks omitted.) Id. Furthermore, "[g]enerally, courts will defer to a local board's interpretation of the ordi-

___

assembled, or disposed of except in accordance with *applicable codes and regulations of the City*, the State of Connecticut and the Federal government." (Emphasis added.) This provision prohibits the storage of material that is "dangerous due to explosion" unless it is stored in accordance with otherwise applicable city, state and federal regulations. Put another way, this provision indicates that, if such material is to be stored, it be done so pursuant to such codes and regulations. That falls short of a statement that such storage is a permitted principal use under the city's zoning ordinances.

nance governing accessory uses unless such ordinance or the interpretation of it, has no foundation in reason." (Internal quotation marks omitted.) Id.

In determining whether a zoning commission's actions were reasonable, we examine whether there was substantial evidence in the record to support the commission's determination. Id., 670–71. "The substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." (Internal quotation marks omitted.) *Gevers* v. *Planning & Zoning Commission*, 94 Conn. App. 478, 483, 892 A.2d 979 (2006).

When a zoning commission has not stated on the record the basis of its determination, the reviewing court must search the record to determine the basis for the commission's decision. *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 670. "If *any* reason culled from the record demonstrates a real or reasonable relationship to the general welfare of the community, the decision of the commission must be upheld." (Emphasis in original.) *Parks* v. *Planning & Zoning Commission*, 178 Conn. 657, 662–63, 425 A.2d 100 (1979). A reviewing court may not substitute its own judgment for that of the commission. "The question is not whether the trial court would have reached the same conclusion, but whether the record before the [commission] supports the decision reached." (Internal quotation marks omitted.) *Municipal Funding, LLC* v. *Zoning Board of Appeals*, 270 Conn. 447, 453, 853 A.2d 511 (2004). "The evidence, however, to support any such decision must be substantial. . . . In light of the existence of a statu-

tory right of appeal from the decisions of local zoning authorities, however, a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty . . . ." (Citation omitted; internal quotation marks omitted.) *DiPietro* v. *Zoning Board of Appeals*, 93 Conn. App. 314, 325, 889 A.2d 269, cert. denied, 277 Conn. 925, 895 A.2d 796 (2006).

With this very deferential standard of review in mind, we now turn to the question of whether the commission's decision approving Complete's site plan application was supported by substantial evidence in the record that the storage of explosives was an accessory use to a contractor's yard. Section 110.3 of the Ansonia Zoning Ordinances defines accessory use as "[a] use which is customarily incidental and subordinate to the principal use of a lot or a building and located on the same lot therewith." We recently reiterated our interpretations of the terms " 'customarily incidental' " and " 'subordinate' " as part of the definition of " 'accessory use' " in *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 658–59. We cited to *Lawrence* v. *Zoning Board of Appeals*, 158 Conn. 509, 512, 264 A.2d 552 (1969), and explained that "[t]he word incidental as employed in a definition of accessory use incorporates two concepts. It means that the use must not be the primary use of the property but rather one which is subordinate and minor in significance. . . . But incidental, when used to define an accessory use, must also incorporate the concept of reasonable relationship with the primary use. It is not enough that the use be subordinate; it must also be attendant or concomitant." (Internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, supra, 658.

We also explained the meaning of the word "customarily," stating that "[a]lthough it is used in this and many other ordinances as a modifier of incidental, it should

be applied as a separate and distinct test. . . . Moreover, in *Lawrence,* we noted that [i]n examining the use in question, it is not enough to determine that it is incidental in the two meanings of that word as discussed [previously]. The use must be further scrutinized to determine whether it has commonly, habitually and by long practice been established as reasonably associated with the primary use. . . . As for the actual incidence of similar uses on other properties . . . the use should be more than unique or rare, although it need not necessarily be found on a majority of similarly situated properties to be considered customary." (Citation omitted; internal quotation marks omitted.) Id., 658–59. We noted in *Lawrence,* that the determination of whether a use is subordinate and customarily incidental to the principal use of the property is one that is "peculiarly within the knowledge of the local board." *Lawrence* v. *Zoning Board of Appeals,* supra, 158 Conn. 514. Therefore, it was incumbent upon the commission, in approving Complete's site plan application, to determine whether the storage of explosives is a use that is customarily incidental and subordinate to the principal use of the property as a contractor's yard.

The commission had information before it, during its regular meeting held on June 25, 2001, that the storage of explosives is an accessory use to the principal use of a contractor's yard. Specifically, Peter Crabtree, the city's zoning enforcement officer, so stated during the meeting. At the time of the June meeting, Complete had not yet filed a site plan application for the construction of a storage bunker on the property. The minutes of the meeting indicate that Complete appeared before the commission to present its proposal for the construction of the storage bunker on its property. During the meeting, the commission members questioned Complete's representative regarding where on the property the bunker would be placed, the proposed size and

capacity of the bunker and of the detonator and other concerns. During the ensuing discussion, some members expressed concern regarding the proximity of the property to densely populated residential zones, and questioned whether, under those circumstances, a public hearing would be required once Complete filed a site plan application. One member of the committee even questioned whether the use was one that was permitted. Crabtree responded that it was, and stated that it was a "minor accessory use." He also stated that the storage of dynamite was "an accessory use to the business . . . ." Crabtree's statements were the only evidence before the commission that the storage of explosives constituted an accessory use of a contractor's yard.

Given the deferential standard of review of a zoning commission's actions, taken together with the fact that the commission was relying on the representation of its zoning enforcement officer, we cannot conclude that the commission abused its discretion in determining that the proposed use was one that is accessory to the principal use of the property as a contractor's yard. It would be inconsistent with that deferential standard of review if we were to require the commission to second-guess the judgment of the very person charged with the enforcement of the city's zoning regulations. We conclude, therefore, that Crabtree's testimony constituted substantial evidence in support of the commission's determination that Complete's proposed use of the property was a permitted accessory use.[12]

---

[12] We recognize that, even under this very deferential standard of review, there may be circumstances under which conclusory statements made by a single individual before a zoning commission may not constitute substantial evidence to support a commission's determination. We emphasize that our conclusion in the present case that Crabtree's conclusory assertions, alone, constituted substantial evidence to support the commission's determination, is grounded on the fact that Crabtree, as the zoning enforcement officer of the city, was charged with the responsibility and the authority to enforce the zoning provisions of the city. Therefore, we conclude that the commission properly accorded great weight to his statements.

The judgment is reversed and the case is remanded with direction to grant the plaintiff's motion to submit additional evidence, and for a new trial on the plaintiff's appeal.

In this opinion the other justices concurred.